USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/29/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
    UNITED STATES OF AMERICA,

                              Plaintiff,

                -against-

    PAUL MATHIEU,

                              Defendant,
-------------------------------------------------------------X

16 Cr. 763-02 (LGS)

ORDER

LORNA G. SCHOFIELD, District Judge:

    WHEREAS, on December 23, 2019, the Government filed its proposed Preliminary Order of Forfeiture/Money Judgment ("POF");

    WHEREAS, on January 17, 2020, Defendant Mathieu filed objections;

    WHEREAS, on January 23, 2020, the Government filed its reply. It is hereby

    **ORDERED** that the forfeiture money judgment against Defendant Mathieu is entered in the amount of $760,539.

    Forfeiture in this case is governed by 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7). Section 981(a)(1)(C) provides for forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" the offense. Section 981 is made applicable to criminal cases by 28 U.S.C. § 2461(c). *See United States v. Contorinis*, 692 F.3d 136, 145 n.2 (2d Cir. 2012). Section 982(a)(7) provides that "[t]he court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *See* 18 U.S.C. § 24 (defining "Federal Health care offense" to include a violation of, or criminal conspiracy to violate, 18 U.S.C. § 1347, and, if the violation or conspiracy relates to a health care benefit program, 18 U.S.C. §§ 371, 1341, 1343 and 1349); *see also* Dkt. No. 298 at ¶¶ 46-48.

"Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place." *United States v. Bodouva*, 853 F.3d 76, 79 (2d Cir. 2017). Forfeiture is an "aspect of sentencing," *Libretti v. United States*, 516 U.S. 29, 39 (1995), and "[t]he Government must establish facts supporting a forfeiture amount by a preponderance of the evidence." *United States v. Walters*, 910 F.3d 11, 31 (2d Cir. 2018). "A [district] court's discretion in ordering criminal forfeiture is cabined by the Eighth Amendment's Excessive Fines Clause. The amount of forfeiture 'must bear some relationship to the gravity of the offense that it is designed to punish.'" *United States v. Peters*, 732 F.3d 93, 99 (2d Cir. 2013) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

Where, as here, forfeiture is sought in the form of a personal money judgment, the district court "must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A); *see Peters*, 732 F.3d at 98. Under Rule 32.2, "the court may determine whether a property is subject to forfeiture 'based on evidence already in the record,' Fed. R. Crim. P. 32.2(b)(1)(B), including testimony at the earlier trial." *United States v. Sabhnani*, 599 F.3d 215, 262 (2d Cir. 2010). "District courts are afforded broad discretion in calculating illicit gains based on the circumstances of a case," as the calculation of forfeiture "is not an exact science." *Walters*, 910 F.3d at 32. A district court is only required to make "reasonable estimate," based on "the available information," *id*. at 31, and may use "general points of reference as a starting point . . . and . . . make reasonable extrapolations from the evidence." *Id*. at 32.

This forfeiture order is based on the evidence presented during the course of a six-week jury trial, including the Court's assessment of the credibility of Defendant Mathieu's testimony, as well as the evidence and arguments of the parties submitted after trial in connection with the POF. The parties' familiarity with the evidence is assumed. *See Davis v. Velez*, 797 F.3d 192, 196 (2d Cir. 2015).

The POF divides the alleged proceeds of fraud offenses for which Defendant Mathieu was convicted into three categories: (1) $239,210 that the Government claims Defendant himself directly received in payments, including $170,460 that the Government noted during the sentencing hearing on December 11, 2019, and an additional $68,750 that the Government has identified since the hearing; (2) $125,451 that the Government claims Defendant Mathieu controlled and distributed to others via checks he wrote and signed in 2008 and 2009 from the Medical Office of Paul J. Mathieu ("MOPJM") account he maintained at Citibank ("Citibank account"); (3) $395,878 that the Government claims Defendant Mathieu controlled and distributed to others via checks he signed beginning in May 2012 from the Ocean View Medical P.C. ("Ocean View") account he maintained at TD Bank ("TD account").

Defendant Mathieu concedes that the proceeds from the first category are properly subject to forfeiture. Defendant objects to the POF with respect to the proceeds identified in the second and third categories, together totaling $521,329. In support of the forfeiture from the second category, the Government cites Defendant Mathieu's trial testimony and exhibits showing that Defendant Mathieu opened the Citibank account before he met Defendant Burman; that Defendant Mathieu signed forms directing Medicare to pay all claims submitted by MOPJM to this account; that beginning in September 2007, Medicare began regularly remitting payments to the account; and that, between 2008 and 2009, Defendant Mathieu admitted writing and signing fifty-five checks from the Citibank account, totaling $134,451 in Medicare proceeds, all in his own handwriting. In response, Defendant Mathieu claims that he was generally unfamiliar with the Citibank account, unaware of the origin of the funds he distributed out of it and claims to have done so at the direction of others.

In support of the forfeiture from the third category, the Government cites trial testimony of Defendant Mathieu and witness Olga Kharuk as well as exhibits showing that Defendant Mathieu held himself out as the owner of Ocean View; that in 2011 he opened the TD account with himself and Defendant Kataev as co-signatories; that Defendant Mathieu signed forms directing Medicare to

transmit payments into the TD account; that sometime after March 2012, Ocean View began to receive Medicare payments in the TD account; that beginning in May 2012, until Defendant Kataev quit and the TD account was closed, Defendant Mathieu admitted signing approximately eighty-seven checks out of the TD account, totaling $395,878 in Medicare proceeds. In response, Defendant Mathieu again contends that the Government overlooks his full testimony that he was directed to distribute the funds by Ms. Volsky and, after being presented with a check booklet, proceeded to sign all eighty-seven checks in one sitting.

Having heard and seen the evidence, the Court credits the Government's evidence and does not credit Defendant Mathieu's evidence to the contrary pertaining to the issue of forfeiture. The Government's evidence is sufficient to establish that Defendant Mathieu "controlled" the funds in the second and third categories of the POF to subject them to forfeiture. *See United States v. Tanner*, 942 F.3d 60, 67-68 (2d Cir. 2019) (concluding that *Honeycutt's* bar against joint and several forfeiture for co-conspirators did not apply to defendant where he was an "active participant in the unlawful activity that his money laundering was designed to conceal, rather than a mere intermediary"); *see also Honeycutt v. United States*, 137 S. Ct. 1626, 1630 (2017) (holding that a defendant may not be held jointly and severally liable for property that his co-conspirators derived from the crime but that the defendant himself did not acquire).

With respect to the second category of forfeiture proceeds, Defendant Mathieu points to testimony that he "rarely looked" at the Citibank account; that sometime in 2008, Ms. Volsky alerted him about "missing money" and, upon checking the Citibank account, he was surprised to find a large sum of money there; and that management then told Defendant Mathieu it was "a mistake" and instructed him to write checks distributing the funds back out of the Citibank account for a specific amount. However, this evidence is belied by Defendant Mathieu's previously depositing more than ninety checks into the Citibank account; by his being the sole signatory for the account; by Medicare

depositing funds into the account because Defendant Mathieu signed a form directing them to do this; and, by admitting to writing and signing fifty-five checks from the account, with payees including Defendant Mathieu himself, a company named Caritas Healthcare where Defendant Mathieu operated a clinic unrelated to Defendant Burman, insurance companies, various New York State and New York City government offices, St. Luke's Hospital and various contractors unrelated to the fraud.

With respect to the third category of forfeiture proceeds, Defendant Mathieu points to testimony that Ms. Volsky approached him, asked him to sign checks and said that she would "take care of filling out the rest"; that when Ms. Volsky presented him with a check booklet, he proceeded to sign all of the checks in one sitting; that, until discovery during his criminal prosecution, he never knew who the payees of the checks were; and that he trusted management at the time he signed the checks. This evidence is similarly belied by three of the eighty-seven checks having been signed by Defendant Burman, not Defendant Mathieu; by Defendant Mathieu being the co-signatory on the TD account; by Defendant Mathieu signing Medicare and Medicaid enrollment documents in which he claimed to be the owner of Ocean View; by Medicare depositing funds into the account because he signed a form directing them to do so; by admitting to signing eighty-seven checks from the account, with payees that included non-Defendant Burman entities such as various medical professionals who worked at Ocean View, a billing company and a medical supply company.

The POF in the amount of $760,539 will be separately signed and filed on the docket.

Dated: January 29, 2020
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE